UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| D.B., a minor, by and through his parent and guardian, SHARON BROGDON, R.W. and C.W., both minors, by and through their parent and guardian ROGER WHITE, <br><br> Plaintiffs, <br><br> v. <br><br> STEVE LAFON, in his individual and official capacity; ALVIN HORD, in his official capacity, and BLOUNT COUNTY SCHOOL BOARD, <br><br> Defendants. | No.: 3:06-CV-75 <br> (VARLAN/SHIRLEY) |

## MEMORANDUM OPINION

Plaintiffs, three students at William Blount High School in Blount County, Tennessee, allege defendants, Blount County school officials, are violating plaintiffs' First and Fourteenth Amendment rights by prohibiting them from wearing clothing depicting the confederate battle flag.

This civil action is now before the Court for consideration of plaintiffs' motion for preliminary injunction and temporary restraining order [Doc. 3]. Plaintiffs seek an order enjoining defendants "to cease interfering with [p]laintiffs' and other students' constitutionally[-]protected right to express themselves through attire that reflects their political beliefs." Doc. 3 at 4. Plaintiffs argue, *inter alia*, that a preliminary injunction is appropriate because there is a substantial likelihood that plaintiffs will prevail on the merits.

*See id.* at 8-9.  Specifically, plaintiffs argue that the ban is unjustified because defendants have failed to identify any disruption at the high school caused by depictions of the flag; and even if such disruptions may be shown, defendants are engaging in viewpoint discrimination because they have banned depictions of the confederate battle flag but not certain other political symbols, such as Malcolm X symbols and foreign national flags.  *See id.*

Defendants respond in opposition to the motion by pointing to two facts.  First, defendants state that during the 2004-05 school year, William Blount High School experienced a number of racially motivated incidents directed against African-American students, including fighting and threats, that resulted in a school lockdown involving law enforcement, as well as complaints of racial harassment to the board of education and federal officials.  *See* Doc. 7-3.  Second, defendants state that there have been 452 dress code violations, 23 of which involved the confederate battle flag, but there have been no reports of violations involving "Malcolm X words . . . or international flags."  *See* Doc. 7-2 at 2.

The issues have been briefed thoroughly by both sides, and the Court heard oral argument on May 4, 2006.  Thus, the motion now is ripe for disposition.  For the reasons discussed herein, the Court will deny plaintiffs' motion for preliminary injunction and temporary restraining order.

**I.     Relevant Facts**[1]

The Blount County Board of Education has adopted a dress code that applies to all high school students. *See* Doc. 7-3 at 5. That dress code prohibits students from wearing certain items, including the following:

> f. clothing which exhibits written, pictorial, or implied references to illegal substances, drugs or alcohol, negative slogans, vulgarities, or causes disruption to the educational process; wearing apparel that is sexually suggestive or that features crude or vulgar commercial lettering or printing and/or pictures that depict drugs, tobacco, alcohol beverages, racial/ethnic slurs or gang affiliation
> . . . .

*Id.* The ban at issue in this case was imposed pursuant to the provision prohibiting clothing that "causes disruption to the educational process." *Id*. at 3.

This action was initiated by the three plaintiffs with the filing of their complaint on March 2, 2006. *See* Doc. 1. In the complaint, plaintiffs allege that on May 30, 2005, during the 2004-05 school year, they, along with the other students at William Blount High School, were informed that depictions of the confederate battle flag on students' clothing would be considered a violation of the school's dress code, even though such depictions were not previously considered violations. *See id.* at 3-4. On September 1, 2005, during the 2005-06 school year, despite the prohibition and "to express pride in his southern heritage," plaintiff D.B. wore a shirt depicting the confederate battle flag, two dogs, and the words "Guarding

---

[1] These facts are drawn from the parties' respective pleadings, briefs, and exhibits. *See* Docs. 1, 3, 7, 15. Prior to and at the outset of the hearing on the instant motion conducted on May 4, 2006, the Court specifically invited both parties to present additional evidence if either party thought it was necessary. Both parties, however, declined by indicating that they would rely only on the facts contained in their respective briefs and exhibits.

our Southern Heritage." *See id.* at 4. He was allegedly confronted by defendant LaFon, the school's principal, who reminded D.B. about the ban, told him to turn his shirt inside out or take it off, and threatened him with suspension if he refused. *See id.* A similar incident involving plaintiff C.W. allegedly occurred on January 13, 2006. *See id.* There is no evidence whether plaintiff R.W. had a similar experience.

Plaintiffs allege that William Blount High School permits other expressions "of political or controversial significance," and there have been no disruptions resulting from the depiction of the confederate battle flag, but nevertheless defendants implemented the ban. *See id.* at 4-5. Plaintiffs D.B. and C.W. also explain in their declarations that they have seen other students wearing foreign flags, Malcolm X symbols, and political slogans. Docs. 1-2, 1-3. Consequently, plaintiffs allege violations of free speech, equal protection, and due process, and seek injunctive relief, a declaratory judgment, and damages. *See id.* at 5-8.

At the same time the complaint was filed, plaintiffs filed the instant motion. *See* Doc. 3. Defendants have responded in opposition to the motion and have included two affidavits. *See* Doc. 7. In the first affidavit, defendant LaFon explains that defendant Hord directed him to apply the dress code without viewpoint discrimination and that during the 2005-06 school year there were "over 452 documented violations of the dress code policy . . ., twenty-three (23) of which involved the wearing of the 'Confederate flag' by students." Doc. 7-2 at 2. Defendant LaFon goes on to explain that while "there have been no reported incidents of students wearing clothing emblazoned with Malcolm X words or caricatures[] or

4

international flags[,] [t]here have been numerous non-documented incidents of violations . . . beyond those documented." *Id*.

In the second affidavit, defendant Hord, the director of Blount County Schools, describes racial tensions at William Blount High School. *See* Doc. 7-3 at 2-3. According to the affidavit, on February 22, 2005, there was a "physical altercation between a white student and an African-American student," which resulted in a civil rights complaint against the school system. *Id*. at 2. On April 7, 2005, defendant Hord requested that the school be locked down with the presence of sheriff's deputies "due to threats of violence against African-American students." *Id*. at 3.

For the remainder of the 2004-05 school year, defendant Hord explains that sheriff's deputies remained at the school, and there were "multiple racially motivated threats and physical altercations" that resulted in suspensions and civil rights complaints and a civil lawsuit that alleges the school system is "a racially hostile educational environment." *Id*. at 2, 3. During the 2005-06 school year, two more racial harassment complaints were made to the board of education. Based upon those events, defendant Hord concluded that "the wearing of the 'Confederate flag' by students during school hours has a significant disruptive effect on the proper education environment of the students at the Blount County high school." *Id*. at 3.

## II. Discussion

### A. Standard for Relief

A party seeking a temporary restraining or preliminary injunction order bears the burden[2] of establishing four factors, which the Court must balance: (1) irreparable harm to movant if such an order is not entered; (2) likelihood of harm to others if such an order is entered; (3) movant's substantial likelihood of success on the merits; and (4) the impact on the public interest by entry of such an order. *See Nightclubs, Inc. v. City of Paducha*, 202 F.3d 884, 887 (6th Cir. 2000); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (citing *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996), *cert. denied*, 519 U.S. 807 (1996)).

When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits factor is often determinative. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). With regard to the irreparable harm factor, courts have long recognized that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

---

[2] Plaintiffs contend that defendants bear the burden of disproving plaintiffs' allegations of a constitutional violation, and defendants' failure to satisfy that burden results in plaintiffs' satisfaction of their burden to show a substantial likelihood of success on the merits. *See* Doc. 15 at 9 (citing *Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 543-44 (6th Cir. 2001)). *Castorina*, however, did not so state. Instead, plaintiff bears the burden of establishing the need for a preliminary injunction. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). A plaintiff would satisfy that burden, in part, by showing a substantial likelihood of success on the merits. *See id.* A plaintiff establishes that he or she has a substantial likelihood of success on the merits by showing that the policy in question is probably unconstitutional. *See id.* (citing *Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458, 460 (6th Cir. 1991)).

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality), *quoted in Connection Distrib. Co.*, 154 F.3d at 288. Therefore, to the extent a plaintiff can establish a substantial likelihood of success on the merits of the First Amendment claim, that plaintiff has also established the possibility of irreparable injury. *See Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995), *quoted in Connection Distrib. Co.*, 154 F.3d at 288. The same is true with regard to the public interest factor, because the public interest always lies with protection of a party's constitutional rights. *See G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). *See also Fisher*, 70 F.3d at 1490. Furthermore, an examination of harm to the parties also requires a consideration of the merits, since the harm to a party resulting from imposition (or not) of an injunction is related to whether the conduct subject to the injunction is unconstitutional (or not). *See Connection Distrib. Co.*, 154 F.3d at 288.

In this case, for the reasons just discussed, the likelihood of success on the merits factor is determinative, and consideration of that factor will be the focus of the remainder of this discussion. Accordingly, the crucial inquiry for the Court is whether the policy in question is likely to be found unconstitutional. *See Connection Distrib. Co.*, 154 F.2d at 288 (citing *Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458, 460 (6th Cir. 1991)).

  B. <u>Constitutionality of Confederate Battle Flag Prohibition</u>

Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Sch. Dist. No. 403*, 393 U.S. 503, 506 (1969). Equally important, however, "the [Supreme] Court has repeatedly emphasized the

7

need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Id*. at 507. Thus, school officials may not punish "silent, passive expression of opinion, unaccompanied by any disorder or disturbance." *Id*. at 508.

School officials may ban racially divisive symbols when there has been actual racially motivated violence and when the policy is enforced without viewpoint discrimination. *See West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358 (10th Cir. 2000), *discussed in Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 543-44 (6th Cir. 2001). On the other hand, even if there has been racial violence that justifies a ban on racially divisive symbols, school officials may not enforce "a viewpoint-specific ban on [some] racially divisive symbols and not others." *Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001).

In light of those principles, a plaintiff would demonstrate a substantial likelihood of success on the merits if he or she can show that the prohibited expression is probably not accompanied "by any disorder or disturbance." *Tinker v. Des Moines Indep. Sch. Dist. No. 403*, 393 U.S. 503, 508 (1969); *Melton v. Young*, 465 F.2d 1332, 1335 (6th Cir. 1975). *See Connection Distrib. Co.*, 154 F.2d at 288 (citing *Congregation Lubavitch*, 923 F.2d at 460). Even if a plaintiff failed to satisfy that burden, however, he or she could also demonstrate a likelihood of success on the merits by showing that the school's policy probably imposes "a viewpoint-specific ban on [some] racially divisive symbols and not others," *see Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001). In this case, plaintiffs argue

8

that they can show both that displays of the confederate battle flag are unaccompanied by any disruption and also that the ban is viewpoint-specific. *See* Doc. 3. On the other hand, defendants argue that such displays are accompanied by disruption and the ban is not viewpoint-specific. *See* Doc. 7. Thus, the Court will address both issues.

*i.     Any Disorder or Disturbance*

Turning first to plaintiffs' argument that displaying the confederate battle flag on students' clothing was not accompanied by "any disorder or disturbance," defendants point to racial tensions that resulted in several disruptions during the school year before the ban was made explicit to the students at a school assembly. *See* Doc. 7-3. Plaintiffs respond, however, that defendants have failed to "make any connection between the [c]onfederate [battle] flag and any incident of racially motivated violence or threats," because the incidents cited by defendants were not the direct result of displays of the confederate flag. *See* Doc. 15 at 2. Furthermore, plaintiffs argue that such a connection is only established where a causal relationship between the prohibited expression and the disruption is shown. *See* Doc. 3 at 7 (arguing "that without a showing of disruption *as a result of* the students' wearing T-shirts displaying the flag, their suspension must be struck down." (citation omitted) (emphasis added)).

Plaintiffs, however, require too much. In *Tinker*, the Supreme Court struck down a ban on black armbands because it was based upon nothing more than "undifferentiated fear or apprehension of disturbance," since there had been no disruptions either before or after the students displayed their armbands. *Tinker*, 393 U.S. at 508. Nowhere does *Tinker*

9

require a direct causal relationship between the expression and the disruption. Instead, *Tinker* requires school officials to show that "engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.'" *Id*. at 509 (quoting *Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir. 1966)). More precisely, the *Tinker* Court was looking for "evidence that the school authorities had *reason to anticipate* that the wearing of the armbands would substantially interfere with the work of the school or impinge upon the rights of other students." *Id*. (emphasis added).

In *West v. Derby Unified School District No. 260*, a middle school student was suspended after drawing a confederate battle flag in violation of the school's racial harassment policy, which was implemented following "incidents of racial tension." 206 F.2d at 1361. In *Melton v. Young*, at the beginning of the 1969 academic year, "the student body became racially polarized," which required police involvement, and administrators responded by appointing a committee that specifically concluded that the confederate battle flag caused the disruption, which resulted in a ban. 465 F.2d at 1333.

Applying *Tinker*, the Tenth Circuit, in *West*, held, "The evidence in this case, however, reveals that based upon recent past events, Derby School District officials had *reason to believe* that a student's display of the Confederate flag *might cause* disruption and interfere with the rights of other students to be secure and let alone." *West*, 206 F.3d at 1366

10

(citing *Tinker*, 393 U.S. at 508) (emphasis added).³ Likewise, the Sixth Circuit, in *Melton*, applied *Tinker* in the same way, although with stronger facts, "finding that the history of racial unrest [in *Melton*] amounted to a material disruption at the school and that the committee's specific findings showed that there was *more than* 'an undifferentiated fear or apprehension of disturbance.'" *Castorina*, 246 F.3d at 544 (quoting *Melton*, 465 F.2d at 1334-35) (emphasis added).

While the facts of the present case are not as strong as those in *Melton* – because the Court does not have the specific finding of a committee or the prevalence of confederate battle flags – nor are they as weak as those in *Tinker* – since the Court does have the history of racial unrest at the school. Instead, the Court is faced with a case somewhat more akin to *West*, in which there is "actual racially motivated violence" directed at African-American students. *Castorina*, 246 F.3d at 543 (characterizing the facts in *West*).

Here, the Court has evidence of a number of racially motivated incidents, including physical altercations between Caucasian and African-American students, racially motivated threats against African-American students, and civil rights complaints, which created a racially tense and charged atmosphere. *See* Doc. 7-3 at 2-3. At one point, defendant Hord locked down the school and called sheriff's deputies as a result of threats against African-American students. *See id.* at 3. In that atmosphere, the Court is hard-pressed to

---

³ In *Castorina*, the Sixth Circuit characterized the decision in *West* by saying it "merely demonstrates that a school board may ban racially divisive symbols when there has been *actual racially motivated violence* . . . ." *Castorina*, 246 F.3d at 543 (emphasis added).

11

conclude that defendants banned displays of the confederate battle flag based on nothing more than "undifferentiated fear or apprehension of disturbance." *Tinker*, 393 U.S. at 508.

Instead, based on the evidence before the Court at this early stage, it appears more likely that defendants had "reason to believe that a student's display of the Confederate flag *might cause* disruption and interfere with the rights of other students to be secure and let alone." *West*, 206 F.3d at 1366 (citing *Tinker*, 393 U.S. at 508) (emphasis added). *See also Castorina*, 246 F.3d at 543 (characterizing the facts in *West*). Thus, plaintiffs have failed to demonstrate that the prohibited expression is probably not accompanied "by any disorder or disturbance." *Tinker*, 393 U.S. at 508; *Melton*, 465 F.2d at 1335. *See Connection Distrib. Co.*, 154 F.2d at 288 (citing *Congregation Lubavitch*, 923 F.2d at 460).

   ii. *Viewpoint-Specific Ban*

Turning to the argument that the ban is viewpoint discriminatory, plaintiffs point to defendant LaFon's affidavit reporting 23 disciplinary instances involving confederate battle flag symbols and no reports of disciplinary instances involving symbols of Malcolm X or international flags. *See* Doc. 7-2 at 2. Plaintiffs contend that those figures demonstrate that the dress code is enforced against the confederate battle flag, but not against other political symbols. *See* Doc. 15 at 4. Plaintiffs also point to the school assembly when school officials explicitly stated the ban applied to the confederate battle flag, but did not mention other symbols. *See id.* at 5. Finally, plaintiffs, in their own affidavits, claim that they have seen students wearing Malcolm X symbols, foreign national flags, and political slogans. *See* Docs. 1-2 at 2; 1-3 at 2.

12

First, plaintiffs' argument over-emphasizes the significance of the dress code violations reported in the LaFon affidavit. Defendant LaFon stated that there were 452 reported dress code violations, 23 of which involved displays of the confederate battle flag, and that there were no reported dress code violations involving displays of "Malcolm X words or caricatures, or international flags." Doc. 7-2 at 2. Significantly, defendant LaFon went on to state, "There have been numerous non-documented incidents of violations of the dress code beyond those documented." *Id.* In other words, there may be other instances of dress code violations, which may involve a variety of symbols, that were resolved informally. Nevertheless, plaintiffs assume that defendant LaFon's affidavit establishes that defendants only single out displays of the confederate battle flag for disciplinary action. The Court declines to make that same assumption without more facts.

Second, based upon the present record, the Court cannot attach the significance to the school assembly that plaintiffs suggest in their argument that it establishes viewpoint discrimination. Plaintiffs contend that the assembly demonstrates that school officials were targeting displays of the confederate battle flag, and not other symbols, as violations of the dress code. *See* Doc. 15 at 4. Their complaint, however, only states that school administrators informed students at that assembly that depictions of confederate battle flags on students' clothing would be prohibited. *See* Doc. 1 at 3. Based only on this allegation from the complaint, plaintiffs *assume* school administrators were *only* banning the confederate battle flag, and not other symbols. But without more facts, the Court is unable

13

to distinguish between plaintiffs' interpretation and other possible interpretations of school officials' statements at the school assembly.

Third, plaintiffs' claims to have seen other students wearing other political symbols are not sufficient to show a viewpoint discrimination, because such claims do not tell us how those symbols are treated under the dress code. Plaintiffs claim to have seen other students wearing certain symbols; but importantly, they fail to explain whether such displays were sanctioned or even seen by school officials, which would explain whether school officials were targeting some symbols but not others. *See* Docs. 1-2 at 2; 1-3 at 2. Nevertheless, plaintiffs conclude that, because they saw some students wearing certain symbols, there must be a viewpoint-specific ban. *See* Doc. 15 at 4. The Court cannot reach a similar conclusion without more than plaintiffs' general claims, because claiming to have seen other students wearing a particular symbol is not the same as demonstrating that school officials "refus[ed] to bar the wearing of this apparel along with the [c]onfederate [battle] flag[,] [which] gives the appearance of a targeted ban, something that the Supreme Court has routinely struck down as a violation of the First Amendment." *Castorina*, 246 F.3d at 541 (citations omitted).

Overall, while plaintiffs have pointed to some evidence that defendants are enforcing the dress code against displays of the confederate battle flag, they have not produced sufficient evidence to show that the school's policy probably imposes "a viewpoint-specific ban on [some] racially divisive symbols and not others." *See Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001).

14

## III. Conclusion

In summary, for the reasons discussed herein, plaintiffs have not presented evidence sufficient to establish a substantial likelihood of success on the merits. Accordingly, the motion for a preliminary injunction will be denied.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE